You may proceed. Thank you, Your Honor. Good morning, and may it please the Court. My name is Katherine Robison, and I represent the appellant William Wallace. I'd like to reserve five minutes of my time for rebuttal. There are two issues on this appeal, either of which merit the reversal of my client's conviction. The first is the District Court's failure to suppress evidence obtained during a stop of a car under the Fourth Amendment. The second is a due process violation that occurred when the government distorted the fact-finding process by causing my client's key witness not to testify, and then during closing arguments not only commenting on that witness's absence, but also misleading the jury regarding the reason for his absence. I'd like to start my argument by focusing on the most compelling reason to reverse my client's conviction, which is that the evidence used to obtain his conviction was the fruit of detention that violated the Fourth Amendment by lasting beyond the time that any possible reasonable suspicion had ended. Now, both officers testified that they stopped the car that my client was riding in in order to obtain, excuse me, to stop the car and Powell, the driver, and my client stepped out of the car. They saw that this wanted parolee was not in the vehicle. At that time, there was no reasonable suspicion to detain and investigate these two men, and they should have been allowed to proceed on their way. Also... No, Your Honor, I would disagree with that. In fact, the Supreme Court's decision in Florida v. Royer is clear that without reasonable suspicion of criminal conduct, you cannot detain an individual even momentarily. Also, no cases that I have seen or that the government has cited involve a check of identification at a time when no reasonable suspicion exists. The two cases cited were the government sites for checking identification, both Chavez Valencia and Bergammer v. McCarthy. In both of those cases, at the time of the identification check, there was reasonable suspicion that still existed. They were pulled over for traffic violations, and that suspicion was ongoing at the time that the ID was checked. Let me ask you what defense counsel said, and this is what I was trying to unscramble. So I'm still trying to figure out what part of the stop and detention you're challenging. So the court says, talking hypothetically, under the applicable principles, does the defendant agree that if the stop was reasonable, and again, just talking hypothetically, under the applicable principles, that requesting identifying information from the two individuals in the car, particularly the driver, was also reasonable. And defense counsel says that's correct. So it seemed to me, at least as an argument as it proceeded before the district court, that the defense counsel was saying that the identifying information was not a problem, but was really just challenging the reasonableness of the original stop. Is that correct? Your Honor, not quite. Because the district court below limited the inquiry to the just the time leading up to pulling over the car, which was not according to the Supreme Court's decision in United States v. Sharp that a stop has two parts, both the initial stop and the scope of the stop, the investigation following that stop, which must be related to the purpose of that stop. Defense counsel had previously in the Okay, so they pull over the car, and they stop the car. Then they ask for identification, correct? And then they get the driver and the passenger out. Out of the car. They took them to the side of the road. Each has an officer. Right. There were actually four officers present. And each of them has an officer assigned at that point. At least one each. But even before that, they immediately knew that the parolee suspect was not there, right? Absolutely. And they knew that before they even asked the people to come out of the car? They knew that at the point that they saw them when they got out of the car. Right. It doesn't appear from the record that they knew that before they got them out of the car. But they continued with their procedures, I'll call it. Yes, they continued. And then they ask them for their ID. Right. After they saw that the parolee was not in the car. Right. And our argument is that the stop should have ended at that point under the Supreme Court's decision in both Royer and Sharp. Okay, now let me just take you one further. If you're wrong and it's okay to ask for the ID, then where do you go? Well, if it's okay to ask for the ID, then, well, there's one more step before they actually ran a computer check is that they looked at the ID. And from the information that they had available to them, they knew that it was a registered driver, a registered owner of the vehicle that was driving his own car. And so at that point, I mean, they had no reason to do a computer check of the identification. But once they run the computer check, I mean, that gave them the reason to search, you know, was the fruit of that detention. But once they got that reason to search, my client no longer has standing to challenge the search part of that. But the checking of the identification occurred during the investigation. Just to be clear, then, the two points that you can test are the initial stop based on the circumstances and then the, I don't want to say detaining, but the time frames, without putting any gloss on it, the time frame during which they then asked for the identification. The detention following the stop, which is the investigation part of it. Getting the ID. Yes. Okay. If it's okay to get the ID, then basically that's kind of the end of your argument that you've made, as I understand it, is that correct? Once it's okay to run the computer check on the ID. Okay. Thank you. Right. All right. Right. And so the detention investigation, as the Supreme Court stated in Sharp, must be related to the purpose for the stop. And the investigation can last no longer than is necessary to either confirm or dispel the reasonable suspicion that supports the stop. In this case, both officers testified that they stopped this car to arrest the wanted parolee Savoy. It's also undisputed that once the two gentlemen exited the car, they saw that Savoy was not in the car. It was at this moment that they no longer had reasonable suspicion to detain or investigate Powell and Wallace. And they should have let them proceed on their way. This is much like the situation in the United States. You know, we have these cases, too, that say they don't have to give them their ID, that you're not really detained if you're out there, they've stopped the car, they still have your ID. They're not required to give ID, correct? I disagree, Your Honor. The cases that it sounds like you're alluding to are when it's a consensual type of situation. Where the police maybe walk up to you on the street, they haven't exerted control and they haven't seized you. But when a car is stopped on the side of the road, the Supreme Court clearly stated in Brendlin v. California that all of the occupants of the vehicle are seized at that moment. And it's not reasonable to believe that a passenger or anyone else in the vehicle would feel free to disobey the officer's commands and leave the scene of the stop or not give identification. I mean, once you're seized, you're at the will of the officer. That's the test for seizure. So it's different here. This is much like in Delaware v. Prowse. The United States said you can't stop a car and seize an individual just to check their identification. I mean, you need reasonable suspicion of wrongdoing just to check identification. And that's the situation we have here. And the impropriety of this continued detention and investigation is also highlighted by two Tenth Circuit decisions, McSwain v. Edgerton. Now McSwain relied on three Supreme Court decisions in reaching its conclusion. Royer, Sharp, and Terry v. Ohio. And in both of those cases, the officers stopped a vehicle because they believed that the temporary registration tag was invalid. However, once the vehicle was stopped, they walked up to the car, they saw that the vehicle registration was valid. However, they went on to investigate and obtain incriminating information during a search. The Tenth Circuit suppressed all of that evidence, reversing the convictions, saying that at the moment that the officers walked up, saw the registration was valid, they no longer had any reasonable suspicion to continue with the detention, including any check of the identification of the driver. This is the same, similar situation that we have here. Now the government also argues that the name Katrina M. Johnson on the registration provided reasonable suspicion. This is simply not the case. Reasonable suspicion requires specific, articulable facts, together with objective and reasonable inferences that the particular person stopped are engaged in criminal activity. And the particular persons stopped here are Powell and Wallace. So, to justify the stop based on the name on the registration, the government would have to show reasonable suspicion of two things. First, that this potential witness, Katrina Johnson, had actually been hurt. And second, that these two gentlemen, Powell and Wallace, were the ones that hurt her. They do not have that here. The most compelling indication that no such reasonable suspicion exists is that the officers simply never investigated this point. They stopped the car, they got the two men out, they didn't ask them any questions about Katrina Johnson. They searched the car, they found a gun, they didn't ask them one question about Katrina Johnson. They then arrested these men, took them back to the station, subjected them to custodial interviews, did not ask them one question about Katrina Johnson. Now if these officers had reasonable suspicion that these two men had hurt a potential government witness, you'd think they would have at least asked them one question about it. Also the facts in the record show that there is no reasonable suspicion. And on appeal, we look de novo at the historical facts to determine if they stack up to that reasonable suspicion. And what do we know here? We know that Katrina Johnson was a potential government witness in a trial that had ended four months before the stop. Now at the time of the stop, there's no indication that there was an ongoing investigation for her. If you look at the informational bulletin that was issued for this witness, it is simply that. It is an informational bulletin. It doesn't state that she was harmed, doesn't in any way state that these two men had harmed her. Interestingly, the bulletin, which is at page 1085 of the excerpts of record, contains both the witness's California identification number and her driver's license number, but conspicuously absent is any indication that there's a car registered to this witness, arguably the most useful piece of information if they were supposed to be looking for this witness. Also, the registration of the car didn't indicate in any way that it was registered to a potential witness. There's simply no facts in the record supporting this alleged reasonable suspicion. Any further? I have another question. If you go back to your extracurricular case where there was a stop about the license plates, did the investigation there, which was a held-up model from Constitutional, did it involve more than just checking ID? It involved checking an ID and then some questioning and then a search that followed that pursuant to a consent search. And so it was multiple steps until the evidence was arrived at. Did you say there was a tent circuit? Yes. Did they say that there was a problem just to ask for the ID? They said it was a problem to continue the stop past the point that no reasonable suspicion existed under the Supreme Court's decisions in Florida v. Royer and United States v. Sharpe and Terry vs. Ohio. And that is the same principle that can be applied to this case at the moment that the officers saw that the wanted parolee was not in the car, which was the reason for the stop because this name on the registration just never stacked up to reasonable suspicion. It can't justify the stop, it can't justify the detention. At that moment, the only possible reasonable suspicion went away. And at that moment, these men should have been allowed to go on their way. The Supreme Court did not ignore the data and they said the question was the search. So the question is is the detention the check and ID search? Your Honor, in Mueller v. Mina which was also followed by this circuit in the Mendez case, in both of those cases, the difference there is that at the time of the questioning, there was reasonable suspicion of some wrongdoing. In Mueller v. Mina, there was a search warrant for the home and so the occupant who was questioned would have been detained anyway during that time period because they didn't extend their detention at all. And likewise in Mendez, there was reasonable suspicion for a traffic violation and it was why the officer was writing his ticket that he asked some other questions. But in both of those cases there was reasonable suspicion for the detention and in this case there is not. So with respect to the driver, if they had not asked the passenger for identification but they just asked the driver, as they typically do when they stop you let me see your license and your registration would that be acceptable in this case? No, Your Honor, because the detention was extended during that entire time and my client was detained that entire time. We don't have your client right now, we just have the driver. Right. I'm just asking you if it's just the driver. If it's just the driver, it's the same. You would also say that once they figured out he wasn't the other Thunderbird or whatever, that they would also not be permitted at that point to ask for his license and registration. Yes, the same principle applies to both the driver and the passenger. Yes, Your Honor. And I would like to reserve the remainder of my time for rebuttal. Thank you. May it please the court, good morning, my name is Laurie Gray I represent the United States. Defendant raises two issues today at oral argument neither justifies reversing defendant's conviction. With regard to the stop, as the record demonstrates, the two officers had reasonable suspicion to stop that car for two reasons. First, based on his earlier observations Sergeant Fox testified that he reasonably believed that Sean Savoy, a wanted parolee was driving the Ford Thunderbird. That this was the same car he'd seen before and that for that reason that provided the basis to stop the car. Defendant doesn't really challenge that part of the equation. Second, while following the car they learned that the car was co-registered to a The record is far more developed on that than defendant allows. Katrina Johnson was a missing witness in a firearms investigation, a material witness and according to the testimony of Sergeant Fabry the case in which she was a missing witness was a very violent case, it was a violent gun. Well just a minute though, a missing witness, has there been a reason to stop a car? Has it? Will they cite me a case? I cannot cite you a case but I can... There's no such case. You can't stop a case because you're looking for a missing witness and you can't stop somebody's car and say, you know, I'm looking for so and so. I agree the case law is the opposite but Your Honor in this case the facts showed that they had reasonable suspicion to believe these two men may have been involved What's the reasonable suspicion? Because the car is registered to somebody by that name? And there's no woman in the car. Well first of all, well that's even that makes it less reasonable to suspect and first of all, how old is that bulletin, three years old? Excuse me? How old is that bulletin, three years old? I don't know, the trial had occurred four months earlier and up until the time That bulletin, how old is the bulletin that they were relying on? I don't know how old the bulletin is. Several years old. And then the bulletin said, you know, don't detain the witness, right? Did not detain Katrina Johnson. Yeah, so you know, and the trial had already been completed. I don't think that's a ground for stopping a car just because it has a name on it. Well if I can flesh out the facts a little bit more The facts are? The trial was four months earlier, so she was still missing Sergeant Fabry knew that this was a violent case where witnesses had been murdered, witnesses had been intimidated the case involved a gentleman named Sapp But there's no reason to suspect these two people They see the car, they get the registration It's registered to Katrina Johnson There's no woman in the car Who are these men that are driving the car? This is a missing witness These men could be involved with the fact that she is missing Sergeant Fabry found that to be compelling and the reason he stopped the car And the court credited that, the district court And at excerpt of record 1009, the court says Fabry believed the connection between Johnson Between Johnson and Sacramento Because of the locality of some of the people involved in this case Defense counsel points out in their brief That much of the contacts were in Sacramento Or excuse me, the rest were in San Francisco The car came back registered to Katrina Johnson of Sacramento And Fabry remembered that he had been told That there was a tie to Sacramento And at the suppression hearing, defendant specifically asked Did you ask the agent that put the bulletin out Special agent Cleary, did you tell Sergeant Fabry That Ms. Johnson is from Sacramento And he says, I don't recall specifically Sacramento But with the number of agencies that I had contact It's possible I did And defense counsel asks again, did you know if she ever had any resident And again, the address is in Sacramento And the agent who put the bulletin out says Well, the defendant in our case was Ramon Sapp And another individual that was in the vehicle The night that Mr. Sapp and Katrina Johnson were arrested On this other case was Cefalo Brown Cefalo Brown was known to be residing in Sacramento So it made sense that if Cefalo Brown was in Sacramento There could be a possible location for Katrina Johnson So they see this car registered to a witness Who was missing four months ago in a violent prosecution The defendant's nickname in that case was Corleone After the Al Pacino character The officers, I submit, your honors Would be remiss if they didn't stop that car To find out what was the situation With regard to Katrina Johnson And so for that very purpose, they did stop the car And when they stopped the car They did not, your honor I would submit to the court that that does not Negate the objective facts that they had at the time That they stopped the car I don't think that you can look at that though, your honor In dragging it forward to look at what the totality Of the circumstances were at the time they stopped the car And once they got the driver's license Then they were off on a new and present violation Which was both the driving on a suspended license Which led to the finding of the firearm And so that was the current investigation They were then pursuing The district court heard the testimony of the officers There was an extensive evidentiary hearing And the district court made the credibility determinations That with regard to these officers They stopped the car to look at both factors As a matter of fact But let's narrow it So they have two reasons to stop the car in their view Correct, your honor They get past that hurdle, now the car is stopped Well, they know they're not Savoy So as far as any further detention, that's out And so all this then hangs on the thread Of whether they might have something to do With the missing witnesses And that is the basis for asking for the identification At that point, yes, your honor Once the two men step out of the car They realize that it's not Savoy One of the officers testified he was surprised by that fact But at that point, who are these guys And now what is the connection to Katrina Johnson So they ask for identification These could be known associates of SAP These could be people that have held Katrina Johnson And she's missing in this violent case And for that reason, your honor The touchstone of the Fourth Amendment is reasonableness And they stopped the car to identify these people And what they did is they asked for their identification They didn't handcuff them There was no Katrina Johnson factor in this case They just stopped the car because it's Savoy Then the guys, they said we'll get out of the car They get out and say oops, not Savoy If there's no Katrina Johnson, would they have any authority In your view to ask for identification And I think we're in a gray area, your honor Because none of the cases cited by defense counsel None of the cases that the government found Were this situation In the cases, the Tenth Circuit case, Judge Gould That you referred to that defense counsel cites In that case, they come up, they see the sticker on the car is valid And at that point, there's nothing more Here we have something more We have the Katrina Johnson aspect Okay, we have something more But what standard does something more have to meet In order to serve as a legitimate basis For the prolonged detention Well, I would suggest In continuing with our Fourth Amendment analysis That the reasonableness of the situation That that's the touchstone of the Fourth Amendment And that what their conduct is, is reasonable That they ask for identification And they don't handcuff them, they don't arrest them They don't tow the car They simply ask for identification They're very narrow in their scope And the court recognized this In making its factual findings And its credibility determinations At excerpt of record, page 1022 The court says, it's undisputed in the record for this case That they stopped the vehicle For the purpose of identifying the occupants of the vehicle And the first thing they did Was ask the people to get out of the car And then ask them for identifying information Which in turn led to the fact That the license had been suspended by the driver A few sentences down, the court continues And says, I believe that the additional information With respect to possible involvement With the occupants and Katrina Johnson Who was according to the government at risk Would have been reasonable to go further And ask for identifying information To see whether or not there might be some connection Between the occupants and her That was the specific factual finding That the court came to After listening to the witnesses testify As to the reasons for which they stopped And I would submit that that wasn't a clearly erroneous finding That the facts existed That there was a missing witness in a violent case And that they took the least intrusive path When they simply asked for identification on that Counsel Judge Miller, I have a question So what the government needs to do Does all this turn off Katrina Johnson? In other words Is she going into the scene at all? And if we go under control Who will be in charge of this? If I have things out there Then are you saying There's no authority one way or the other Whether the police would ask for an ID Or are you saying That they couldn't ask for an ID And pretend someone turned around to check No, I'm saying After 200 years The Supreme Court hasn't decided that What is the government's position? The government's position, Your Honor Is that the Katrina Johnson issue would be one factor And if you're saying take away that factor Then I think the Supreme Court cases That you cited before too With regard to asking for ID Could cover this particular situation Which is that's what they did Once they validly stopped the car They asked for ID And I do think there's a question With regard to the scope of that stop As to whether defendant retained Kept that issue alive for appeal I just want to clarify the record on that If I might, in their reply brief They cite to a number of sustained objections To questions with regard to that And say that those questions show that For that reason they maintain The ability to argue this on appeal What I want to clarify the record about Is that those questions cited in the reply brief Happened before the quote in the answering brief Which was brought up to defendant When they argued the case here And the court was trying to Figure out what exactly defendant was arguing If I can just have a moment, your honor I can find That particular section That's the excerpt of record 1013 The district court was trying to figure out Exactly what defendant was raising To know what to rule on, to make a record I just want to follow up On a couple of points with counsel Let me start with Mr. Kerrigan As we started this proceeding It's my understanding That the question for the court Really is the reasonableness of the stop And hypothetically should the court Determine that the stop was justified Under the applicable principles Then all that followed the stop Would not be subject to objection By the defendant based on standing Is that correct? Defendant says that's correct The court gives defense counsel Another chance Clarifies again Just talking hypothetically Under the applicable principles Identifying information From the two individuals in the car And particularly the driver Was that also reasonable Defendant doesn't object And say this is precisely What I was trying to do earlier He doesn't say this is my opportunity To argue to you why the scope is overbroad Instead he concedes that issue And it's based on that That the government contends That the defendant has waived Any challenge to that issue Defendant also If there are any more questions With regard to the scope of the stop Or the reasonableness I'm happy to answer those If not defendant said there were two issues The second being the immunity consideration And while it was never gotten to In the oral argument I imagine that will be addressed in the reply With regard to that I would just say that the record Is clear that the defendant Failed to meet his burden of proof Of proving an intentional distortion By the prosecutor Indeed the facts prove that the government's conduct Was just the opposite It was the government who sought Appointment of counsel for the witness And it was the government that ensured That the court knew exactly what was going on And if there are any questions with regard to that I'm happy to answer those Or else I would submit this on the brief That has been filed in the argument presented today It appears there's no questions on that Thank you I'd first like to address some points Raised by the government First of all we do challenge the initial stop Our opening brief pages 21 to 25 We state why that was not proper We are not conceding that here We are focusing on the more compelling reasons I think that was clear Maybe what I understood those quotations to be Was that after the initial stop That you weren't, at least as I read what she was talking about Not that you weren't challenging the initial stop But whether at trial the defense counsel was basically saying Well if the initial stop turns out to be reasonable End of game If you look at the context of those statements He clearly had raised this issue of the scope of the stop several times And the court and the government had cut off All line of questioning in that area And then after the pages that the government counsel cited At 10.13, at 10.16 The judge is again asking what about this check of ID And the defense counsel says I think it goes back to what I said earlier Reading from line 7 down At a certain point the detention becomes more than just an inquiry Becomes an investigative situation without more to go on They really didn't have sufficient facts to investigate further Once I believe it was Sergeant Fabry said As soon as Mr. Powell exited the vehicle He knew that it wasn't Mr. Savoy At that point if they knew that the vehicle was owned by Mr. Powell And any further investigation regarding Mr. Savoy ceased At that point Then any determination as to whether or not they had any connection with Ms. Johnson Could have easily been taken care of by turning over the information to Agent Cleary Which is what the bulletin said But still what do you do with the With the concession That Ms. Gray referred to That the defense counsel conceded That it was reasonable To get identifying information from both individuals Right That's on page 10.13, 10.14 Yes your honor But when you look at this The court was considering the stop just being the initial stop Which was not how the law sees it And so the defense counsel after several times being stopped In this line of questioning Basically getting to the point where he realizes he can't get any further with the court But he the whole time and even from after that In page 116 which the court recognized Yes that's the point you raised before Was that he was arguing that the investigation should not have continued Past the point that they knew that Savoy wasn't in the car I think this issue was raised It was also raised in the moving papers which this court held as enough In United States vs. Con And the fact that there was a back and forth during the oral argument Under United States vs. Sparks is also enough not to have waived this issue And it is properly before the court I think in the moving papers It was argued something to this effect Any detention of Powell and Wallace after it became clear That neither of the occupants was Sean Savoy nor Katrina Became a de facto arrest without probable cause Correct That was in the defense below written papers yes Also I wanted to point out to the court That the fact that these officers didn't question about Katrina Johnson is relevant As this court stated in United States vs. Con In that case the officer pulled over a car on the suspicion of drunk driving And did not conduct a field sobriety test And did not question the driver about drinking This court found that persuasive evidence That there was no reasonable suspicion of drunk driving So the fact that there was no investigation into this alleged reasonable suspicion About Katrina Johnson is absolutely relevant To your determination on this appeal Which case was that on the drunk driving United States vs. Con Also The government ignores that the car was co-registered Was also registered to Antonio L. Powell Who was driving the car Once he got out and the officers saw that There was certainly no further reasonable suspicion On this allegation about Katrina Johnson Also to briefly address the immunity issue The government continues to rely on the fact That the prosecution below sought appointment of counsel However as clearly laid out in our briefs The timing of this appointment did not undo the previous Threats and coercion that had been exerted by the government And also that was exerted on counsel himself And the government continues to ignore That during closing argument the prosecution clearly pointed To this witness I don't think he's easily coerced Here's my problem with your argument on that On that issue Is to get by this Whether or not the government Even distorted the fact finding process Whether intentionally or unintentionally Because it's true The U.S. Attorney's assistant said well I'm going to do this and do that Seems to me a witness in that position Is going to have to talk to a lawyer If I were the judge presiding over that case and a witness came up I said you better have a lawyer And any lawyer is going to tell that witness to take to fifth So how can you say the government distorted the process You tell that witness to take to fifth too If that witness were your client I'm sure Well in the face of the threats that we had from the prosecution below Then that was pretty much his only reasonable choice The difference here in this case is we also have two Government investigators who went to this witness' home Sat in his living room and said that if you testify for Wallace We're going to prosecute you, you're probably going to lose your job And you're going to go to jail And after that it's uncontested that this witness did feel threatened And that if he testified that would be the outcome Moreover in this case we can't ignore that during closing argument The prosecutor commented and said I don't see this witness sitting in this courtroom And that he has no criminal exposure I mean this was misrepresenting to the jury why this witness wasn't testifying Leading them to conclude the only reason Powell didn't testify Was because he wouldn't have had testimony favorable to the defense Which is not true For this reason this is a clear distortion of the fact finding process And another reason to reverse the conviction Thank you Thank you
judges: Tashima, McKeown, Gould